IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL WIGGINS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-303 |
| | : | |
| UNIVERSAL PROTECTION SERVICES, *et al.*, | : | |
| | : | |
|     Defendants. | : | |

**MEMORANDUM**

**Goldberg, J.**                                                                                                           **April 7, 2022**

Plaintiff Michael Wiggins, acting *pro se*, brings this claim against Defendant Universal Protection Services, LLC alleging that he was terminated from his position as a security officer based on discrimination and other unlawful workplace practices. Defendant moves to dismiss the Complaint in its entirety. For the following reasons, I will grant the Motion and dismiss the Complaint without prejudice to Plaintiff's right to file an amended complaint.

**I.      FACTUAL BACKGROUND**

The following facts are set forth in the Complaint.[1]

Defendant provides security services for various hospitals throughout the Philadelphia area. From August 3, 2019 through September 21, 2019, Plaintiff worked as a security guard for Defendant at Episcopal Hospital. (Compl. 1.)

---

[1] In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Plaintiff asserts that, during his tenure with Defendant, he was subjected to both gender and religious discrimination by Defendant's Site Supervisor Lola Watson.  Watson was responsible for scheduling and assigning guards to cover posts at Episcopal Hospital.  Plaintiff alleges that Watson routinely scheduled posts according to gender, giving males the most demanding, stand-up posts, while reserving the easier, sit-down posts for women.  Plaintiff opposed this scheduling, and, in retaliation, Watson no longer allowed Plaintiff to rotate posts where he would have an opportunity to sit.  Additionally, Plaintiff alleges that he informed Watson, who is Muslim, that he could not work Sundays because he wanted to attend church services.  Watson then began to harass Plaintiff because he is Christian.  (Id. at 2.)

As a result of Watson's harassment, Plaintiff sought a transfer and received employment through Allied at Penn Presbyterian Hospital.  From September 23, 2019 to December 5, 2019, Plaintiff continued his work with Defendant at Penn Presbyterian.  (Id.)

On December 5, 2019, Plaintiff was assigned to work in the Emergency Department with female security guard Iesha Estevez.  According to the Complaint, Estevez started an altercation with Plaintiff during which she threatened, insulted, and threw water on Plaintiff.  As a result, both Estevez and Plaintiff were terminated from Defendant's employ.  Defendant's Human Resources employee, Patrice O'Rourke, made the decision to terminate Plaintiff's employment but never contacted Plaintiff regarding this decision, issued a disciplinary action, or conducted an exit interview.  (Id. at 3.)

After serving his six-month period of ineligibility, Plaintiff sought reinstatement at Penn Presbyterian and was denied.  Thereafter, Plaintiff sought re-employment at Episcopal Hospital.  Although Defendant's Account Manager Steven Pease agreed to rehire him, he was unable to do so because O'Rourke had listed him as not eligible for rehire due to the December 2019 incident.  (Id. at 4.)

Plaintiff sought intervention from the union. When the union notified O'Rourke of the pending grievance, O'Rourke agreed to rehire Plaintiff. According to the Complaint, Plaintiff's bid for rehire was met with opposition by Supervisor Watson, but Pease nonetheless approved Plaintiff's rehire at Episcopal.

On Plaintiff's second day back on September 26, 2020, Watson came to work—despite it being her day off—and observed Plaintiff working at the metal detectors in the Emergency Room entrance. When the very first person Plaintiff screened got past him with a lighter, which was a prohibited item, Watson tried to send Plaintiff home until another supervisor moved him to outside bike patrol. Later that day, Plaintiff heard Watson complaining about Plaintiff "f**k[ing] up" and Plaintiff being in the wrong uniform, even though Watson herself was in full Muslim garb. Ultimately, Watson had Plaintiff terminated that day. (Compl at p. 4 & ¶¶ 33–46.)

On January 19, 2021, Plaintiff filed a federal action alleging gender discrimination, religious discrimination, harassment and hostile work environment, and tortious interference with contract against Universal, Lola Watson, and Patrice O'Rourke. Following a screening of the Complaint under 28 U.S.C. § 1915(e)(2)(B), I dismissed all claims against Watson and O'Rourke, leaving only the claims against Defendant Universal.

On June 16, 2021, a default was entered against Defendant due to its failure to file an answer or other responsive pleading. Following a timely motion by Defendant, and upon good cause shown, I set aside default on July 27, 2021. Defendant then moved to dismiss the Complaint.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

A *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." U.S. ex rel. Walker v. Fayette Cnty., Pa., 599 F.2d 573, 575 (3d Cir. 1979), (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520. "Yet there are limits to our procedural flexibility. For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Thus, even a *pro se* complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-

4

me accusation" or "naked assertions" that are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

## III.   DISCUSSION

### A.   Failure to Exhaust Administrative Remedies

Defendant first seeks dismissal of Plaintiff's claims for discrimination and harassment in violation of Title VII of the Civil Rights Act based on an alleged failure to exhaust administrative remedies.

A Title VII plaintiff is required to exhaust all administrative remedies before bringing a claim for judicial relief. 42 U.S.C. § 2000e-5(e)(1); Antol v. Perry, 82 F.3d 1291, 1295 (3d. Cir. 1996). This standard requires the Plaintiff to "fil[e] a timely discrimination charge with the EEOC." DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 431 (E.D. Pa. 2007) (citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). The purpose of this requirement is "(1) to ensure 'that an employer is made aware of the complaint lodged against him and is given the opportunity to take remedial action,' and (2) to give 'the EEOC the opportunity to fulfill its statutory duties of eliminating unlawful practices through the administrative process.'" O'Donnell v. Michaels' Family Rest., Inc., No. 07-cv-5386, 2008 WL 2655565, at *2 (E.D. Pa. July 1, 2008) (quoting Jackson v. J. Legis Crozer Library, No. 07-cv-481 2007 WL 2407102, at *5 (E.D. Pa. Aug. 2, 2007)). As a general rule, the exhaustion requirement is "strictly construed and the failure to pursue the appropriate administrative remedies will bar judicial review." Elberson v. Pa., 396 F. App'x 819, 821–22 (3d. Cir. 2010).

Defendant advances two bases for its failure to exhaust argument.

First, it asserts that Plaintiff has failed to demonstrate that he actually received a right-to-sue notice, which is a necessary prerequisite to all of the Title VII claims. This argument, however, is

directly undermined by the documents attached to Plaintiff's Response and Sur-reply, which reflect that Plaintiff completed a charge with the EEOC on January 5, 2021, and that the EEOC issued a right-to-sue letter on the same day. (ECF No. 19, Ex. A; ECF No. 26, Ex. A.)[2] Accordingly, I decline to dismiss Plaintiff's claims on this ground.

Second, Defendant presses that any claims in Plaintiff's Complaint relating to discrimination at Episcopal Hospital in September 2019 were not timely exhausted. Defendant correctly notes that before filing a claim in federal court, a Title VII plaintiff in Pennsylvania must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. Noel v. The Boeing Co., 622 F.3d 266, 270 (3d Cir. 2010); 42 U.S.C. § 2000e–5(e)(1). "If a claimant fails to exhaust his or her claim within the requisite time period, that claim is administratively barred. This statute of limitations applies to discrete employment actions, including promotion decisions." Noel, 622 F.3d at 270 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)).

A plaintiff may pursue a time-barred claim for discriminatory conduct only if he can show that the act is part of an "ongoing practice or pattern of discrimination" by the defendant. Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 480–81 (3d Cir.1997) (citing West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995)). To assert a claim under this theory, however, a plaintiff must show that: (1) at least one discriminatory act occurred within the filing period; and (2) the harassment was more than isolated or sporadic acts of intentional discrimination, as opposed to a persistent, ongoing pattern. Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 784 (W.D. Pa. 2000),

---

[2] In resolving a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3rd Cir. 1990).

aff'd, 276 F.3d 579 (3d Cir. 2001). "The inquiry underlying the continuing violation construct is whether the plaintiff should have asserted her rights and filed with the EEOC within the 300 days, or whether circumstances were such that she could not know that the conduct complained of would continue." Id. at 785.

Here, all of the incidents relating to Plaintiff's first tenure at Episcopal Hospital occurred, at the latest, in September 2019. Yet, Plaintiff did not file a charge with the EEOC until January 5, 2021—more than 300 days later. Plaintiff does not attempt to assert any continuing violations, and none of the Complaint's allegations allow the inference that the continuing violations theory should apply. This is particularly true in light of the fact that a period of almost one year elapsed between the original alleged discrimination by Watson in September 2019 and the second incident with Watson on September 25, 2020. Given the discrete nature of the September 2019 events, Plaintiff certainly could and should have asserted his rights regarding any discrimination by Watson the first time he left Episcopal Hospital.

Accordingly, I will dismiss Plaintiff's gender discrimination claim, which is premised entirely on events occurring during Plaintiff's first tenure with Episcopal Hospital. Additionally, I will dismiss Plaintiff's religious discrimination and harassment/hostile work environment claims to the extent they are premised on the events during Plaintiff's first tenure with Episcopal Hospital.

B.     **Religious Discrimination**

The sole remaining religious discrimination claim is premised on Plaintiff's one-day tenure at Episcopal Hospital, following which Ms. Watson had Plaintiff terminated.

To establish a claim of discrimination, a plaintiff must show that an employer had a discriminatory animus against an employee, and that the animus resulted in a challenged action, such as dismissal, failure to promote, or failure to hire. Lewis v. Univ. of Pittsburgh, 725 F.2d 910, 914 (3d Cir. 1983). Absent direct evidence of discrimination, a plaintiff must rely on the burden-

shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, a plaintiff must plead a *prima facie* case of discrimination. McDonnell Douglas, 411 U.S. at 802. Such a *prima facie* case requires the plaintiff to set forth factual allegations that he (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410–11 (3d Cir. 1999).

To adequately plead an inference of discrimination under the fourth element, a plaintiff must allege facts upon which a "court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons." Equal Employment Opportunity Comm'n v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1990). One way that a plaintiff can create such an inference is by asserting that he was treated less favorably than similarly situated employees outside of the protected class. Jones, 198 F.3d at 413. While "similarly-situated" does not necessarily mean identically situated, the plaintiff must nevertheless be similar in "all relevant respects." Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222–23 (3d Cir. 2009) (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)). Demonstrating that employees are similarly situated often includes a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Opsatnik, 335 F. App'x at 223 (quotations omitted). Alternatively, a plaintiff may "rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." Greene v. Virgin Islands Water & Power Auth., 557 F. App'x 189, 195 (3d Cir. 2014).

Here, Plaintiff alleges that on September 26, 2020—the second day of his second tenure at Episcopal Hospital—he was working in his uniform from Presbyterian Hospital, not his Episcopal

uniform. (Compl. ¶¶ 26, 33–34.) Ms. Watson, who is Muslim, was "livid" about Plaintiff being "in the wrong uniform." (Id. ¶ 28.) Meanwhile, according to Plaintiff, Watson came out to the metal detectors while Plaintiff was working, wearing full Muslim garb, to demonstrate proper security wand scanning techniques. (Id.) She was wearing nothing representing Allied or Episcopal. (Id. ¶ 29.) The Complaint alleges that, on that same day, Watson "levied a bogus complaint about plaintiff being 'in the wrong uniform' meanwhile she was not in uniform at all." (Id.)

These allegations do not allow any inference of religious discrimination. Plaintiff does not plausibly allege that Ms. Watson was similarly situated to him. Indeed, Plaintiff concedes that she was a supervisor, while he was a security guard. Moreover, Plaintiff also makes no assertion that he sought a religious exemption from the uniform requirement and was denied, while Ms. Watson was granted such an accommodation. Absent at least some factual allegations that would permit an inference that Plaintiff and Watson were valid comparators or that Defendant otherwise discriminated against Plaintiff on the basis of his religion, this claim must be dismissed.

### C. Harassment and Hostile Work Environment

Plaintiff's next presses a hostile work environment theory. The United States Supreme Court has noted that not all workplace harassment violates Title VII, which is not "a general civility code for the American workplace." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80–81 (1998). When, however, a workplace "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). To succeed on a hostile work environment claim, the plaintiff must establish that (1) the employee suffered intentional discrimination because of his protected status; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would

9

detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability. Mandel v. M&Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013).

"The inquiry into whether the discriminatory or retaliatory environment was 'severe or pervasive' recognizes that less severe isolated incidents which would not themselves rise to the level of retaliation may, when taken together as part of 'the overall scenario,' evidence retaliatory animus, and one severe incident may be enough to create a hostile work environment." Komis v. Sec'y of U.S. Dept. of Labor, 918 F.3d 289, 293-94 (3d Cir. 2019). "The 'severe and pervasive' element requires [a plaintiff] to show that her work environment became so abusive because of the discriminatory actions by her supervisors and co-workers that it changed the very nature of her employment." Komis v. Perez, No. 11-cv-6393, 2014 WL 3437658, at *2 (E.D. Pa. July 15, 2014). "To judge whether such an environment is hostile or abusive, [a court] must consider all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667 (3d Cir. 1999) (quoting Harris, 510 U.S. at 23. Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001).

Plaintiff alleges that during his two-day, second tenure at Episcopal Hospital, supervisor Watson came to work, despite not being scheduled, for the sole purpose and intention of getting him fired. (Compl. ¶¶ 33, 35.) Plaintiff admits that, while he was working at a security checkpoint and assigned to screen patient belongings for unauthorized items not permitted into the hospital, he let a person get past him with a cigarette lighter. (Id. ¶¶ 34. 36.) Watson then approached Plaintiff and asked him if he had completed the "paperwork" regarding training at the metal detector. (Id. ¶ 41.) When Plaintiff said he was "not sure," Watson tried to send Plaintiff home. (Id.) The weekend

supervisor, Zachery Roberson, "attempted to diffuse the situation by switching plaintiff's post to an outside bike patrol." (Id. ¶ 42.) Later, while Plaintiff was on break, he overheard Watson on the phone stating, "the only one who was all f**ked up was [Plaintiff]" and complaining that Plaintiff was "in the wrong uniform." (Id. ¶¶ 43, 45.) That same day, Watson called Plaintiff into the office and informed him that he was terminated. (Id. ¶ 46.)

Taking all of these allegations as true, Plaintiff fails to state a plausible hostile work environment claim. All of the events arise from a single day where Plaintiff, by his own admission, made an error in his work. "An isolated or single incident of harassment, unless extremely serious, does not establish a hostile work environment." Friel v. Mnuchin, 474 F. Supp. 3d 673, 691 (E.D. Pa. 2020). Furthermore, Plaintiff's belief that he should have been granted some leeway since it was his first day back or belief that his being out of uniform was bogus is insufficient to elevate Watson's conduct to the level of "severe and pervasive." See Ulrich v. U.S. Sec'y of Veterans Affairs, 457 F. App'x 132, 140 (3d Cir. 2012) (holding that it is not enough that "the employee subjectively perceives [the environment] as abusive or hostile[,] rather the environment must be one "a reasonable person would find hostile or abusive.").

Moreover, plaintiff fails to plausibly allege that the harassment was motivated by discriminatory animus. See Aramson v. William Paterson Coll. Of N.J, 260 F.3d 265, 278 (3d Cir. 2001) (noting that to succeed on a hostile work environment claim, a plaintiff must plausibly plead discriminatory animus). Plaintiff does not connect any of Watson's actions with a discriminatory bias towards Plaintiff's status either as a male or as a non-Muslim. Rather, Plaintiff states that because Watson disliked him based on his previous complaints about her, he was unfairly disciplined for his admitted infractions of improperly screening visitors and wearing the wrong uniform. Plaintiff's bald allegation that he was treated poorly by a supervisor who was of a different

11

gender and religion does not allow a reasonable inference that any discriminatory animus was involved.

Accordingly, I will dismiss Plaintiff's hostile work environment/harassment claim.

### D.   Tortious Interference With Contract

Plaintiff's final claim alleges tortious interference with contract. Specifically, he alleges that he is a union member of Local 32BJ, which is governed by a Collective Bargaining Agreement. (Compl. ¶ 57.)  Although Plaintiff was not a direct employee of Episcopal, he claims to have had a "contractual and/or business relationship with Episcopal." (Id.)  He asserts that Watson, by going directly to Episcopal to have Plaintiff terminated, circumvented the union's authority to advocate on his behalf because the scope of the union's powers is limited to matters involving Defendant; the union cannot intervene on Plaintiff's behalf regarding decisions made by members of Episcopal. (Id. ¶ 59.)

To state a claim for tortious interference under Pennsylvania law, a plaintiff must allege:  (1) the existence of a contractual relation between the plaintiff and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation; (3) the absence of privilege or justification on the defendant's part; and (4) actual legal damage.  CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 357 F.3d 375, 384 (3d Cir. 2004).  "Essential to a right of recovery . . . is the existence of a contractual relationship between the plaintiff and a 'third person' other than the defendant."  Daniel Adams Assocs., Inc. v. Rimbach Pub., Inc., 519 A.2d 997, 1000 (Pa. Super. 1987).  "[A] party to the contract, may not tortiously interfere with the contract."  Motise v. Parrish, 297 F. App'x 149, 152 (3d Cir. 2008).

Plaintiff alleges that Defendant was a party to the Collective Bargaining Agreement with the union and that Defendant interfered in that contract through Watson's actions of having Plaintiff

fired directly by Episcopal. As a tortious interference cause of action cannot be asserted against a party to the contract, this claim must be dismissed.

## IV. CONCLUSION

Having taken all of the Complaint's factual allegations as true and in the light most favorable to Plaintiff, I find that Plaintiff has failed to state a cognizable claim for relief against Defendant. Nevertheless, I remain cognizant that a court must *sua sponte* allow a *pro se* plaintiff leave to amend his or her complaint unless it would be inequitable or futile to do so. Phillips v. Cnty of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008); Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Amendment of several of Plaintiff's claims would be futile. First, all of Plaintiff's gender and religious discrimination claims occurring in September 2019 are unequivocally time barred. Moreover, according to the facts pled in the Complaint, Plaintiff cannot plausibly maintain a tortious interference with contract claim. Accordingly, I will dismiss these claims with prejudice.

As to the religious discrimination and hostile work environment based on the events in September 2020, however, Plaintiff could conceivably set forth additional facts that would allow those claims to survive Rule 12(b)(6) scrutiny. In light of the lenient standard for granting *pro se* plaintiffs leave to amend, I will dismiss those claims without prejudice and give leave to file an amended complaint. But Plaintiff is reminded that any complaint must be filed in good faith with sufficient supporting facts to make out those claims dismissed without prejudice.

An appropriate Order follows.